IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 18-CR-04058-RK-1 |
| | ) | |
| | ) | |
| WILLIAM AUSTIN LEE CRABTREE, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

Pending before the Court is Defendant William Austin Lee Crabtree's Motion to Suppress as to Count One and Motion to Suppress as to Count Two. (Docs. 27, 28). The Government filed suggestions in opposition (Doc. 33) and Defendant filed supplemental suggestions in support (Doc. 47). The motions are now ripe for consideration. The Court recommends denying Defendant's motions for the following reasons.

## Findings of Fact

On May 2, 2018, Defendant William Austin Lee Crabtree was indicted for possession with intent to distribute methamphetamine (Count One) and possession with intent to distribute fifty grams or more of methamphetamine (Count Two), both in violation of 21 U.S.C. § 841(a)(1). (Doc. 2). The charges stemmed from two separate events. Count One originated with a traffic stop performed on March 28, 2017. Count Two originated with a suspected drug deal on October 17, 2017. The Court held a hearing on these matters on November 21, 2019. These findings address each event in turn.

### I.   Count One: The March 28, 2017, Investigatory Stop

Confidential informants (CIs), Crime Stopper tips, anonymous citizen complaints, and law enforcement agencies identified Mr. Crabtree as a transporter and distributor of methamphetamine. (Tr. 5:14-16). Based on this information, the Mid-Missouri Unified Strike Team and Narcotics Group (MUSTANG) Drug Task Force began surveilling Mr. Crabtree. (Tr. 6:13-18). Officers observed Mr. Crabtree associating with known drug dealers and driving multiple Cadillacs. (Tr.

6:24-25; 7:1-3; 8:1-2). Mr. Crabtree frequently visited his girlfriend, Caysee Temmen, at her home on Bluebird Drive in Jefferson City, Missouri. (Tr. 7:1-7). According to CIs, Ms. Temmen stored methamphetamine at her home and assisted Mr. Crabtree with distributing narcotics. *Id.*

On March 28, 2017, MUSTANG Task Force Officer (TFO) Kyle Petty observed Mr. Crabtree leaving Ms. Temmen's home in a black Cadillac Escalade. (Tr. 7:15-22; 8:5-6). TFO Petty began following Mr. Crabtree and contacted Officer Jeremy Bowman, a K-9 officer with Jefferson City Police. (Tr. 8:9, 13, 23-25; 9:1-4). TFO Petty advised Officer Bowman that, based on the information learned through MUSTANG's investigation, he believed Mr. Crabtree was transporting methamphetamine and had just left the 2400 block of Bluebird Drive. (Tr. 8:16-23; 23:21-24). Officer Bowman was advised to stop Mr. Crabtree if possible. (Tr. 8:13-21). Shortly thereafter Officer Bowman identified Mr. Crabtree's vehicle, determined he was speeding, and initiated a stop at 5:08 p.m. (Tr. 24:18-20; 25:5-8, 13-14).

During the stop, Mr. Crabtree was not in possession of his driver's license but did provide personal identifying information. (Tr. 27:8-11). At 5:15 p.m., Officer Bowman asked Mr. Crabtree to exit and walk to the rear of his vehicle. (Tr. 27:13-16). When asked if he had any contraband, Mr. Crabtree immediately attempted to put his right hand in his pocket. (Tr. 28:1-9). Officer Bowman told Mr. Crabtree to keep his hand out of his pockets. *Id.* Mr. Crabtree eventually denied having any contraband and refused consent to search his person. (Tr. 28:11-14). Mr. Crabtree also denied having any contraband in his vehicle and refused a request to search his Cadillac. (Tr. 28:21-25; 29:1-7). At 5:17 p.m., Officer Bowman deployed his drug canine, Chopper, to conduct a sniff of the vehicle's exterior. (Tr. 29:9-13). At 5:19 p.m. Chopper alerted to the presence of drugs at the front grill area of the vehicle. (Tr. 29:17-18).

Officers proceeded to search Mr. Crabtree's vehicle and recovered a set of digital scales that field-tested positive for methamphetamine residue. (Tr. 29:24-25; 30:1-6). Mr. Crabtree was placed under arrest. (Tr. 30:7-8). During a search incident to arrest, Officers discovered two plastic bags containing methamphetamine near Mr. Crabtree's groin. (Tr. 30:12-13; 31:2-3).

**II.   Count Two: The October 17, 2017, Suspected Drug Deal**

At approximately 7:49 a.m. on October 17, 2017, Deputy Wayne Cleveland of the Moniteau County Sheriff's Office received a report of a black Lincoln parked on private property. (Tr. 63:4-11). With the help of Tipton Police Chief Ed Wiecken, Deputy Cleveland located the Lincoln in the parking lot of an apartment complex known for the prevalence of drug transactions. (Tr. 64:1-

25; 65:7-13). Deputy Cleveland and Chief Wiecken observed Tyler Henderson, the driver of the Lincoln, reach into the driver's side window of a gold Cadillac driven by Mr. Crabtree. (Tr. 66:5-7). When Deputy Cleveland exited his patrol car, Mr. Henderson began to walk away from the Cadillac. (Tr. 66:8-13). Deputy Cleveland noticed something clenched in Mr. Henderson's hand, which Mr. Henderson identified as twenty dollars. (Tr. 66:20-22). While Deputy Cleveland spoke with Mr. Henderson, Mr. Crabtree left his vehicle and began to quickly walk away. (Tr. 67:2-5). Deputy Cleveland and Chief Wiecken both ordered Mr. Crabtree to stop. (Tr. 68:2-9). However, Mr. Crabtree refused to stop until Deputy Cleveland threatened to deploy his Taser. *Id.*

Deputy Cleveland and Chief Wiecken then spoke with Mr. Henderson and Mr. Crabtree separately about their behavior. (Tr. 66:15-17; 69:1-3). Both men offered different explanations for why Mr. Henderson was leaning in the window of the Cadillac. *Id.* Deputy Cleveland also learned Mr. Crabtree was on probation for a prior drug charge and asked to search the Cadillac. (Tr. 69:4-7). Mr. Crabtree refused consent and Deputy Cleveland then contacted Sheriff Tony Wheatley to request a drug canine. *Id.* Approximately ten to fifteen minutes later, Sheriff Wheatley arrived with his dog, Mizzou. (Tr. 69:19-23). After Mizzou alerted at the driver's side door of Mr. Crabtree's Cadillac, the officers searched the vehicle and found a white bag on the floorboard containing 316 grams of methamphetamine. (Tr. 70:2-3).

### III. November 21, 2019, Evidentiary Hearing

On November 21, 2019, the Court conducted an evidentiary hearing on these matters. After hearing testimony from the officers involved in investigating and arresting Mr. Crabtree, the Court found all officers credible. (Tr. 118:11-12). The Court heard testimony regarding Chopper's certification and reliability. Officer Bowman testified that Chopper was certified by the Missouri Police Canine Association and the North American Police Work Dog Association. (Tr. 21:1-25; 22:1-13; *see also* Gov't Ex. 2). Chopper had a one-hundred percent success rate in controlled environments. (Tr. 59:23). Moreover, Officer Bowman testified he was trained to recognize Chopper's alerts, including changes in breathing, speed of sniffing, ear movement, lowered posture, and directed focus. (Tr. 34:18-23).

In addition to Officer Bowman's testimony, Defendant called Timothy Rainey, a certified automotive technician, to testify about the design of a Cadillac Escalade. (Tr. 93:12-24). According to Mr. Rainey, the Escalade is designed to force air to escape through the door and window seams or through an air release valve located in the rear of the vehicle. (Tr. 102:7-9). Mr.

Rainey further testified that air cannot travel from the passenger cabin into the engine compartment of a Cadillac Escalade. (Tr. 101:15-17).

## Discussion

Mr. Crabtree argues in Count One that police erred by illegally prolonging the traffic stop and relied on an unreliable canine for the dog sniff. In Count Two, Defendant claims officers unlawfully seized him without any reasonable suspicion of criminal activity. The Court recommends denying both of Mr. Crabtree's motions for the following reasons.

An officer can stop and briefly detain a person for investigatory purposes if the officer has reasonable suspicion that criminal activity "may be afoot." *Terry v. Ohio*, 392 U.S. 1, 25-31 (1968); *United States v. Lewis*, 864 F.3d 937, 946 (8th Cir. 2017). Reasonable suspicion requires officers "to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant [an] intrusion." *Terry*, 392 U.S. at 30. In other words, the presence of adequate reasonable suspicion to justify a *Terry* stop is determined by the "totality of the circumstances." *United States v. Wheat*, 278 F.3d 722, 731 (8th Cir. 2001) (quoting *Alabama v. White*, 496 U.S. 325, 330 (1990)). Reasonable suspicion requires "considerably less than proof of wrongdoing by a preponderance of the evidence" and "obviously less" than what is necessary to establish probable cause. *United States v. Sokolow*, 490 U.S. 1, 7 (1989) (citation omitted); *Williams v. Decker*, 767 F.3d 734, 739 (8th Cir. 2014) (citation omitted).

### I.   Count 1: The March 28, 2017, Investigatory Traffic Stop

Mr. Crabtree contends police lacked reasonable suspicion to perform a dog sniff, which unreasonably prolonged the March 2017 traffic stop. Alternatively, Mr. Crabtree asserts that Chopper was unreliable, and the resulting search lacked probable cause. In response, the Government alleges that police justifiably prolonged the traffic stop due to a reasonable suspicion of criminal activity involving drugs. Further, the Government maintains police had probable cause to search Mr. Crabtree's car because Chopper was properly certified.

*A. Officers had reasonable suspicion to extend the traffic stop.*

Law enforcement may "briefly stop a moving automobile to investigate a reasonable suspicion that its occupants are involved in criminal activity." *United States v. Collins*, 883 F.3d 1029, 1032 (8th Cir. 2018) (citation omitted). Reasonable suspicion "can arise from information that is less reliable than that required to show probable cause," including an anonymous tip. *White,* 496 U.S. at 330. However, whether an anonymous tip amounts to reasonable suspicion depends on both the

quantity of information it conveys as well as the quality, or degree of reliability, of that information, viewed under the totality of the circumstances. *Id.*; *see also Navarette v. California*, 572 U.S. 393, 406 (2014) ("The question before us . . . is whether the 'content of information possessed by police and its degree of reliability,' gave the officers reasonable suspicion that the driver of the truck . . . was committing an ongoing crime." (quoting *White*, 496 U.S. at 330)).

It is uncontested that Officer Bowman had probable cause to stop Mr. Crabtree for speeding. Mr. Crabtree relies on *Rodriguez v. United States* for the proposition that, absent reasonable suspicion, a traffic stop "justified only by a police-observed traffic violation . . . 'become[s] unlawful if it is prolonged beyond the time reasonably required'" to issue the ticket. 135 S.Ct. 1609, 1612 (2015) (quoting *Illinois v. Caballes*, 543 U.S. 405, 407 (2005)). Detention beyond that reasonably required to finish the tasks associated with a traffic stop "'would be unreasonable unless something that occurred during the traffic stop generated the necessary reasonable suspicion to justify further detention.'" *United States v. Fuehrer*, 844 F.3d 767, 773 (8th Cir. 2016) (quoting *United States v. Ovando-Garzo*, 752 F.3d 1161, 1163 (8th Cir. 2014)).

Here, officers obtained reasonable suspicion to prolong the traffic stop. For one, before the stop officers had constructed a vivid backdrop of facts detailing Mr. Crabtree's drug activities. The Court heard testimony from numerous officers outlining an extensive investigation of Defendant, including multiple CIs, anonymous tips, and surveillance that pointed to Mr. Crabtree's regular involvement in trafficking narcotics from Kansas City to Jefferson City. Immediately before the stop, officers observed Mr. Crabtree leaving the residence of Ms. Temmen on Bluebird Drive, who also reportedly assisted Defendant with his trafficking and distribution. TFO Petty reported this fact, as well as his suspicion that Mr. Crabtree was involved in narcotics distribution, to Officer Bowman. Such facts supported a reasonable suspicion that criminal activity involving narcotics was afoot.[1]

Additionally, Mr. Crabtree's actions during the stop further justified prolonging his detention. Defendant did not have his driver's license and, when questioned about contraband, immediately attempted to put his hand in his pocket.[2] *See United States v. Davis*, No. 18-2975, 2019 WL 6333977, at *3 (8th Cir. Nov. 27, 2019) (reasonable suspicion to extend traffic stop existed where

---

[1] While the testimony regarding many of the tips at issue in this matter were somewhat vague, the Court nonetheless finds the totality of the circumstances surrounding the traffic stop rose to a reasonable suspicion to justify the prolonged stop. *See* Wheat, 278 F.3d at 731.

[2] Drugs were shortly thereafter recovered from the area of Defendant's groin.

defendant was not listed on vehicle documents and movements were consistent with an attempt to hide drugs); *United States v. Sanford*, 813 F.3d 708, 713 (8th Cir. 2016) (defendant's furtive movements justified further detention to investigate possible weapon). This, combined with the information provided by TFO Petty prior to the stop and Officer Bowman's experience investigating narcotics, gave rise to a reasonable suspicion Mr. Crabtree possessed a controlled substance. *See United States v. Murillo-Salgado*, 854 F.3d 407, 415-16 (8th Cir. 2017) (defendant's actions and officer's experience in drug investigations formed the basis for continued detention); *United States v. Riley*, 684 F.3d 758, 764 (8th Cir. 2012) (defendant's drug-related criminal history contributed to reasonable suspicion to extend the stop). As such, the Court concludes reasonable suspicion justified extending the stop.

*B. The dog sniff provided probable cause to search the vehicle.*

Next, Mr. Crabtree argues that Chopper was an unreliable dog that could not create probable cause to search the vehicle. Mr. Crabtree relies on the inverse of the rule that an alert by a reliable dog gives an officer probable cause to search a vehicle. *See United States v. Sundby*, 186 F.3d 873, 875-76 (8th Cir. 1999). However, the question for the Court "is whether all the facts surrounding a dog's alert, viewed through the lens of common sense, would make *a reasonably prudent person* think that a search would reveal contraband or evidence of a crime." *Florida v. Harris*, 568 U.S. 237, 248 (2013) (emphasis added).

Here, the Government has established that Chopper was certified as proficient in identifying drugs by the Missouri Police Canine Association and the North American Police Work Dog Association. *See United States v. Jackson*, 811 F.3d 1049, 1052 (8th Cir. 2016) ("An affidavit 'need only state the dog has been trained and certified to detect drugs' and 'need not give a detailed account of the dog's track record or education.'" (quoting *United States v. Lakoskey*, 462 F.3d 965, 978 (8th Cir. 2006))). Additionally, Officer Bowman testified that Chopper had a perfect record in training. *See Harris*, 568 U.S. at 246 ("The better measure of a dog's reliability thus comes away from the field, in controlled testing environments.") Mr. Crabtree produced no evidence or experts to challenge Chopper's training or reliability. Moreover, from the record it appears clear that Chopper alerted to the presence of narcotics in the vehicle. As a consequence, the Court finds officers reasonably relied on Chopper's alert to create probable cause to search the vehicle.

Mr. Crabtree also argues airborne particulates containing narcotics could not have been present in the location that Chopper alerted. Defendant points to an automotive technician's testimony

that air from the inside of the Cadillac's cabin could only escape through the doors, windows, or the rear of the vehicle, and not under the hood. While such testimony was illuminating, it failed to address the central question of whether a reasonably prudent person could rely on Chopper's alert. From the record it seems Chopper did in fact alert to the presence of drugs. Moreover, it seems plausible to the Court that airborne particulate escaping from a vehicle's door or window could be detectible to a trained canine near the front of the vehicle. Accordingly, the Court concludes that Chopper was a reliable dog and his alert provided probable cause to search Mr. Crabtree's vehicle.[3]

## II.     Count Two: The October 17, 2017, Suspected Drug Deal

Lastly, Mr. Crabtree argues the seized drugs in Count Two should be suppressed as the fruit of an unlawful seizure. Mr. Crabtree contends officers had no reasonable suspicion to seize him because his behavior was lawful. Moreover, he claims the seizure lasted longer than necessary. However, "[f]actors consistent with innocent travel, when taken together, can give rise to reasonable suspicion, even though some travelers exhibiting those factors will be innocent." *United States v. Carpenter*, 462 F.3d 981, 986 (8th Cir. 2006). Moreover, an experienced officer might consider the "'time of day or night, location of the suspect parties, and the parties' behavior when they become aware of the officer's presence.'" *United States v. Quinn*, 812 F.3d 694, 697-98 (8th Cir. 2016) (quoting *United States v. Dawdy*, 46 F.3d 1427, 1429 (8th Cir.1995)). Given the totality of the circumstances, officers reasonably concluded Mr. Crabtree's behavior was evidence of criminal activity.

Officers observed Mr. Henderson leaning into Mr. Crabtree's driver side window. The two luxury vehicles were parked in an area known to police for narcotics sales. When Mr. Henderson spotted the police, he attempted to walk away. He had a crumpled $20 bill in his hand. While the officers intercepted and investigated Mr. Henderson, Mr. Crabtree abandoned his vehicle and began to walk quickly away. Mr. Crabtree ignored the officers' orders to stop until he was threatened with a Taser. Both Mr. Henderson and Mr. Crabtree thereafter offered different

---

[3] The Court notes that, while rare, other district courts have excluded evidence produced by dog sniffs. But those courts generally focused on the way the dog "alerted" and the training the dog received. *See*, *e.g.*, *United States v. Heald*, 165 F.Supp. 3d 765, 777-81 (W.D. Ark. 2016) (officers could not rely on the dog sniff where a dog had never conducted a sniff in day time, the sniff occurred in extreme heat, the dog "alerted" in an untrained manner, and the canine handler expressed doubt as to whether the dog actually alerted); *United States v. Esteban*, 283 F.Supp. 3d 1115, 1133-37 (D. Utah 2017) (probable cause did not exist where testimony by an expert in detection dogs raised serious concerns about the efficacy of the dog's training and certification).

explanations for their behavior. Upon learning Mr. Crabtree was on probation for drug possession, Deputy Cleveland immediately requested a canine unit. Sheriff Wheatly and Mizzou arrived within ten to fifteen minutes. Such facts show the officers acted diligently based on a reasonable suspicion that a drug transaction had just been completed. Accordingly, the Court recommends denying Mr. Crabtree's motion to suppress as to Count Two.

## Conclusion

For the reasons above, Defendant's arguments regarding evidence suppression in this case are without merit, and the motions to suppress should be denied.

Accordingly, IT IS THEREFORE RECOMMENDED that the Court, after making an independent review of the record and applicable law, enter an order DENYING Defendant William Austin Lee Crabtree's Motion to Suppress as to Count One and Motion to Suppress as to Count Two. (Docs. 27, 28).

Counsel are reminded that each party has fourteen (14) days from the date of receipt of a copy of this Report and Recommendation within which to file and serve objections. A failure to file and serve objections by this date shall bar an attack on appeal of the factual findings in the Report and Recommendation which are accepted or adopted by the district judge, except on the grounds of plain error or manifest injustice.

Dated this 8th day of December, 2019, at Jefferson City, Missouri.

/s/ Willie J. Epps, Jr.
Willie J. Epps, Jr.
United States Magistrate Judge