# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 18-4058-CR-C-RK |
| | ) |
| WILLIAM AUSTIN CRABTREE, | ) |
| | ) |
| Defendant. | ) |

## ORDER

Pending are Defendant William Austin Crabtree's Motions to Suppress. (Docs. 27-28.) Defendant seeks to suppress all evidence produced by the seizures of his person and searches of his vehicles and person on March 28, 2017, and on October 17, 2017. On November 21, 2019, Magistrate Judge Willie J. Epps, Jr. conducted an evidentiary hearing on Defendant's motions. (Doc. 48.) On December 8, 2019, Judge Epps issued his Report and Recommendation wherein he recommends the Court should deny Defendant's motions. (Doc. 49.)

On December 17, 2019, Defendant filed objections to the Report and Recommendation. (Doc. 52.) In large part, Defendant's objections reiterate the arguments he raised in his motions. The Government has not responded to Defendant's objection, and the time for doing so has passed. L.R. 74.1(b)(2). As required by 28 U.S.C. § 636(b)(1), the Court has conducted a de novo review. After carefully considering and independently reviewing the record, the parties' arguments, and the applicable law, the Court adopts Judge Epps's findings of fact and conclusions of law in his Report and Recommendation. This Order is meant only to summarize and supplement the Report and Recommendation.

## Background[1]

### A.    March 28, 2017 Searches and Arrest

Beginning in 2016, law enforcement "continuously" and "constantly" received information from several sources about Defendant associating with known drug dealers as well as making

---

[1] Unless otherwise noted, the facts in this section were obtained from the hearing transcript (Doc. 48).

multiple trips to the Kansas City area to purchase large amounts of methamphetamine and bringing it "back to the central Missouri area" for distribution. (Doc. 48. at 5-15.) Law enforcement also observed Defendant associating with known drug dealers. *Id*. at 5. As a result, the Mid-Missouri Unified Strike Team and Narcotics Group ("MUSTANG") Drug Task Force began surveilling Defendant. *Id.* at 5-7, 9, 13-14.

On March 28, 2017, Task Force Officer ("TFO") Kyle Petty was surveilling Defendant. *Id*. at 6-7, 15-16. When Defendant left his girlfriend's residence, TFO Petty began following Defendant's vehicle and contacted Jefferson City Police Officer Jeremy Bowman. *Id*. at 8-9. TFO Petty briefly told Officer Bowman about Defendant's involvement in methamphetamine trafficking and informed him that Defendant, who was driving a black Escalade, was leaving his girlfriend's residence, where TFO Petty suspected Defendant was storing methamphetamine. *Id.* at 7-8, 23-24, 43-44. Officer Bowman was also familiar with Defendant and his involvement in drug trafficking. *Id*. at 39. Because he suspected Defendant was engaging in drug activity, TFO Petty told Officer Bowman that "if [Officer Bowman] could make a stop on [Defendant], to go ahead." *Id*. at 8-9, 23-25.

Officer Bowman activated his patrol car's radar. *Id*. at 24-25. After identifying Defendant's vehicle and determining Defendant was speeding, Officer Bowman stopped Defendant. *Id.* at 25. After talking with Defendant, Officer Bowman returned to his vehicle and determined Defendant had a valid license and no warrants. *Id*. at 27. Officer Bowman returned to Defendant's vehicle and asked him to step out of the vehicle; Defendant complied. *Id*. Although Defendant denied having contraband, he immediately reached for his right pocket when asked about contraband. *Id*. at 28. Defendant complied with Officer Bowman's command to keep his hands out of his pockets. *Id*. Defendant denied consent to the search of his person or vehicle. *Id.* at 28-29. Officer Bowman patted down Defendant for weapons to ensure officer safety and also because of the information provided by TFO Petty and Officer Bowman's belief that Defendant was associated with narcotics and was part of a federal investigation. *Id*. at 28, 44. No weapons were found on Defendant. *Id.* at 28, 46.

Officer Bowman deployed his nationally and state certified drug canine, Chopper,[2] to sniff the exterior of Defendant's vehicle. *Id*. at 20-22, 29, 31-33, 46, 59-60. Chopper alerted Officer Bowman that he detected one of his trained odors at the front of Defendant's vehicle. *Id*. at 29,

---

[2] Chopper was in Officer Bowman's patrol car at the time of the stop.

47-48. A search of the vehicle revealed an operable digital scale with methamphetamine residue. *Id.* at 29-30, 50. Officer Bowman arrested Defendant and searched him. *Id*. at 30, 53. Officer Bowman located "an abnormal substance between [Defendant's] legs." *Id*. The substance was approximately forty grams of methamphetamine. *Id*. at 30-31.

**B.     October 17, 2017 Search and Arrest**

On October 17, 2017, Moniteau County Sheriff's Deputy Wayne Cleveland received a report of a black Lincoln parked on private property. *Id.* at 63, 70-71. With Tipton Police Chief Edward Wiecken's assistance, the black Lincoln was located in the parking lot of an apartment complex where "multiple" narcotics investigations had previously occurred. *Id*. at 63-65, 71-74, 80-81. Deputy Cleveland observed the Lincoln's driver, Tyler Henderson, reach into the driver's side window of a gold Cadillac, which was driven by Defendant. *Id*. at 65-66, 73. Deputy Cleveland exited his vehicle, and Henderson walked away from Defendant's vehicle with twenty dollars in his hand. *Id*. at 66, 74.

While Deputy Cleveland spoke with Henderson, Defendant got out of his vehicle and "briskly" walked away. *Id*. at 67. Chief Wiecken and Deputy Cleveland ordered Defendant to stop. *Id.* at 68, 81-82. Defendant refused to stop until Deputy Cleveland threatened to deploy his Taser. *Id*. at 68. Deputy Cleveland learned Defendant was on probation for possession of a controlled substance. *Id*. at 69, 78. Defendant refused consent to search of his vehicle. *Id*. at 69. Based on Defendant being on probation and his other actions, Deputy Cleveland requested a drug canine. *Id*. at 69, 78, 85-86. Ten to fifteen minutes later, Moniteau County Sheriff Tony Wheatley arrived with his nationally certified narcotics and tracking canine, Mizzou. *Id*. at 69-70, 83-85, 88-90. Mizzou indicated a positive alert for drugs at the driver's door. *Id*. at 70, 86-87. A search of the vehicle revealed a bag of more than 300 grams of methamphetamine on the front floorboard. *Id*. at 70.

**C.     Indictment**

In May 2018, Defendant was charged with violating 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) on March 28, 2017, for knowingly and intentionally possessing with the intent to distribute a detectable amount of methamphetamine. (Doc. 2.) In addition, Defendant was charged with violating 21 U.S.C. §§ 841(a)(1) and (b)(1)(A) on October 17, 2017, for knowingly and intentionally possessing with the intent to distribute 50 grams or more of methamphetamine. *Id*.

3

Defendant moved to suppress evidence produced as a result of the allegedly illegal searches and seizures on March 28, 2017, and October 17, 2017. (Docs. #27-28).

**D.     Evidentiary Hearing**

During the November 21, 2019 evidentiary hearing on Defendant's motions to suppress, TFO Perry, Officer Bowman, Deputy Cleveland, Chief Wiecken, and Sheriff Wheatley testified to the facts outlined above. *Id.* at 3-91.  In addition, Defendant called a certified automotive technician, Timothy Rainey, to testify about the air pressure relief valve in the 2008 Cadillac Escalade – the type of vehicle searched on March 28, 2017. *Id.* at 92-96. According to Rainey, air enters the Escalade below the windshield and travels into the air conditioning compressor or heater component. *Id.* at 99. The air then comes out the car vents. *Id.* at 99-100. If the car's windows and doors are closed, Rainey testified the air would only leave the vehicle through the pressure valve in the back of the vehicle. *Id.* at 100. Rainey stated no air in the vehicle's cabin travels into the engine or through the vehicle's headlights or grille but air could seep out the window seals or doors. *Id.* at 101-02.

## Discussion

**A.     Motion to Suppress – Count One**

Defendant does not dispute Officer Bowman had probable cause to stop him for speeding on March 28, 2017, but he argues Officer Bowman illegally prolonged the stop. Law enforcement may detain a person for investigatory purposes if law enforcement has reasonable suspicion that criminal activity "may be afoot." *Terry v. Ohio*, 392 U.S. 1, 25-31 (1968). "In determining whether an officer possessed reasonable suspicion to conduct a temporary investigative detention, or '*Terry* stop,' courts look only at the information the officer possessed at the time." *Waters v. Madson*, 921 F.3d 725, 736 (8th Cir. 2019) (citations omitted). "To establish an unreasonably prolonged detention, the defendant must show that the officer detained him beyond the amount of time otherwise justified by the purpose of the stop and did so without reasonable suspicion." *United States v. Meier*, 759 F. App'x 523, 532 (8th Cir.), *cert. denied,* 140 S. Ct. 183 (2019) (citing *United States v. Donnelly*, 475 F.3d 946, 951-52 (8th Cir. 2007)). Based on the totality of circumstances presented at the evidentiary hearing and set forth in Judge Epps's Report and Recommendation (Doc. 49, at 4-6), the Court finds Officer Bowman had reasonable suspicion to conduct a *Terry* stop, and Defendant's detention was justified.

4

Defendant also argues Chopper was an unreliable drug canine, and therefore, his alert to drugs could not create probable cause to search the vehicle. "Assuming that the dog is reliable, a dog sniff resulting in an alert on a container, car, or other item, standing alone, gives an officer probable cause to believe that there are drugs present." *United States v. Donnelly*, 475 F.3d 946, 955 (8th Cir. 2007). To determine whether a canine's alert establishes probable cause to search an area, the court must consider "whether all the facts surrounding a dog's alert, viewed through the lens of common sense, would make a reasonably prudent person think that a search would reveal contraband or evidence of a crime." *United States v. Tuton*, 893 F.3d 562, 570 (8th Cir. 2018), *cert. denied,* 139 S. Ct. 1192 (2019) (citation omitted). "[E]vidence of a dog's satisfactory performance in a certification or training program can itself provide sufficient reason to trust his alert." *Id*. (citation omitted).

It is undisputed that Chopper was trained and certified to detect drugs, he could smell odors on a molecular level, and he was 100% accurate in training and during certification. (Doc. 48, at 55, 59-60.) Defendant presented an automotive technician's testimony that air from the vehicle could not escape the front of the car – where Chopper alerted Officer Bowman to the scent of drugs. But the automotive technician's testimony did not contradict Chopper's ability to smell odors on a molecular level or dispute that Chopper has been 100% accurate in training and certification. As such, Defendant presented no evidence challenging Chopper's training, certification, abilities, or reliability. The Court finds Chopper was reliable, and his alert established probable cause for a search of the vehicle.

**B.     Motion to Suppress – Count Two**

Defendant argues the officers' observations on October 17, 2017 – specifically, Henderson's and Defendant's actions, the timing of the interaction (i.e., night), the location of the interaction (i.e., in a parking lot associated with drug transactions), the vehicles involved (i.e., a Lincoln and a Cadillac), and Henderson having twenty dollars in his hand – did not establish probable cause to detain him. (Doc. 52, at 2.) To determine whether there is probable cause to detain a defendant, the Court considers "the totality of the circumstances, in light of the officer's experience." *United States v. Houston*, 920 F.3d 1168, 1172 (8th Cir. 2019) (citation omitted). Here, the totality of the circumstances includes more than the officers' observations identified by Defendant. The Court must consider the following additional observations by the officers: (1) Henderson leaning into Defendant's car, (2) Henderson leaving the vehicle once an officer exited

5

his vehicle, (3) Henderson walking away from Defendant's vehicle with money in his hand, (4) Defendant leaving his vehicle and briskly walking away, (5) Defendant disobeying the officers' directive to stop walking until he was threatened with a Taser, (6) Defendant's and Henderson's explanations for their meeting, and (7) Defendant being on probation for drug position. When considering these facts in light of the officers' collective experience, the Court finds the officers had a reasonable suspicion that a drug transaction occurred, and they had probable cause to detain Defendant. *See* Doc. 49, at 7-8; *see also United States v. Houston*, 920 F.3d 1168, 1172 (8th Cir. 2019) (finding the defendant's "flight from the officers in an area known for gun-related crime was sufficient to justify a reasonable suspicion of criminal activity.") (citation omitted).

Defendant also maintains the seizure was longer than necessary. To establish the seizure was unreasonably prolonged, Defendant must demonstrate law enforcement detained him "beyond the amount of time otherwise justified by the purpose of the stop and did so without reasonable suspicion." *Meier*, 759 F. App'x at 532. Defendant has not satisfied his burden. Rather, the record demonstrates law enforcement immediately requested a canine unit, and within ten or fifteen minutes, the canine unit arrived. Thus, the Court finds the lengthy of the seizure was not unreasonably prolonged.

## Conclusion

For the foregoing reasons, Defendant's Objections to the Report and Recommendation (Doc. 52) are **OVERRULED**, and Defendant's Motions to Suppress (Docs. 27-28) are **DENIED**.

**IT IS SO ORDERED**.

s/ Roseann A. pKetchmark
ROSEANN A. KETCHMARK, JUDGE
UNITED STATES DISTRICT COURT

DATED: May 11, 2020

6

Case 2:18-cr-04058-RK   Document 55   Filed 05/11/20   Page 6 of 6