# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# CENTRAL DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 18-CR-04058-RK-1 |
| | ) | |
| | ) | |
| WILLIAM AUSTIN LEE CRABTREE, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

Pending before the Court is Defendant William Austin Lee Crabtree's Motion to Reopen Suppression Hearing as to Count One (the "Motion to Reopen"). (Doc. 56). The Government filed suggestions in opposition. (Doc. 60). Defendant has not filed supplemental suggestions in support and the time to do so has expired. The motion is now ripe for consideration. The Court recommends denying Defendant's Motion to Reopen for the following reasons.

## Findings of Fact

On May 2, 2018, Defendant William Austin Lee Crabtree was indicted for possession with intent to distribute methamphetamine (Count One) and possession with intent to distribute fifty grams or more of methamphetamine (Count Two), both in violation of 21 U.S.C. § 841(a)(1). (Doc. 2). The charges stemmed from two separate events. Count One originated with a traffic stop performed on March 28, 2017. Count Two originated with a suspected drug deal on October 17, 2017. Mr. Crabtree filed motions to suppress evidence as to both counts. (Docs. 27, 28). The Court held a suppression hearing on these matters on November 21, 2019.

In its first Report and Recommendation, the Court recommended denying Defendant's motions to suppress, finding, as to Count One, that officers had reasonable suspicion to extend the traffic stop and that the police dog sniff provided probable cause to search Defendant's vehicle. (Doc. 49). As to Count Two, the Court found that the officers acted diligently in detaining Mr. Crabtree based on a reasonable suspicion that a drug transaction had just been completed. (*Id.*) After careful consideration and an independent review of the record, the parties' arguments, and the applicable

law, the District Court overruled Defendant's objection, adopted this Court's findings of fact and conclusions of law as set forth in the first Report and Recommendation, and denied the motions to suppress. (Doc. 55).

Approximately three months later, Defendant filed the instant Motion to Reopen concerning Count One. (Doc. 56). In this motion, Defendant contends that the police dog improperly alerted to his vehicle, which resulted in the discovery of the drugs that serve as the basis of Count One. This, Defendant argues, supports his argument that the officers did not have probable cause to search his vehicle and the drug evidence as to Count One must be suppressed. These findings address Defendant's current request, which concerns only Count One.

## I. Count One: The March 28, 2017, Investigatory Stop

Confidential informants (CIs), Crime Stopper tips, anonymous citizen complaints, and law enforcement agencies identified Mr. Crabtree as a transporter and distributor of methamphetamine. (Tr. 5:14-16). Based on this information, the Mid-Missouri Unified Strike Team and Narcotics Group (MUSTANG) Drug Task Force began surveilling Mr. Crabtree. (Tr. 6:13-18). Officers observed Mr. Crabtree associating with known drug dealers and driving multiple Cadillacs. (Tr. 6:24-25; 7:1-3; 8:1-2). Mr. Crabtree frequently visited his girlfriend, Caysee Temmen, at her home on Bluebird Drive in Jefferson City, Missouri. (Tr. 7:1-7). According to CIs, Ms. Temmen stored methamphetamine at her home and assisted Mr. Crabtree with distributing narcotics. (*Id.*).

On March 28, 2017, MUSTANG Task Force Officer (TFO) Kyle Petty observed Mr. Crabtree leaving Ms. Temmen's home in a black Cadillac Escalade. (Tr. 7:15-22; 8:5-6). TFO Petty began following Mr. Crabtree and contacted Officer Jeremy Bowman, a K-9 officer with Jefferson City Police. (Tr. 8:9, 13, 23-25; 9:1-4). TFO Petty advised Officer Bowman that, based on the information learned through MUSTANG's investigation, he believed Mr. Crabtree was transporting methamphetamine and had just left the 2400 block of Bluebird Drive. (Tr. 8:16-23; 23:21-24). Officer Bowman was advised to stop Mr. Crabtree if possible. (Tr. 8:13-21). Shortly thereafter Officer Bowman identified Mr. Crabtree's vehicle, determined he was speeding, and initiated a stop at 5:08 p.m. (Tr. 24:18-20; 25:5-8, 13-14).

During the stop, Mr. Crabtree was not in possession of his driver's license but did provide personal identifying information. (Tr. 27:8-11). At 5:15 p.m., Officer Bowman asked Mr. Crabtree to exit and walk to the rear of his vehicle. (Tr. 27:13-16). When asked if he had any contraband, Mr. Crabtree immediately attempted to put his right hand in his pocket. (Tr. 28:1-9). Officer

Bowman told Mr. Crabtree to keep his hand out of his pockets. (*Id.*) Mr. Crabtree eventually denied having any contraband and refused consent to search his person. (Tr. 28:11-14). Mr. Crabtree also denied having any contraband in his vehicle and refused a request to search his Cadillac. (Tr. 28:21-25; 29:1-7). At 5:17 p.m., Officer Bowman deployed his drug canine, Chopper, to conduct a sniff of the vehicle's exterior. (Tr. 29:9-13). At 5:19 p.m. Chopper alerted to the presence of drugs at the front grill area of the vehicle. (Tr. 29:17-18).

Officers proceeded to search Mr. Crabtree's vehicle and recovered a set of digital scales that field-tested positive for methamphetamine residue. (Tr. 29:24-25; 30:1-6). Mr. Crabtree was placed under arrest. (Tr. 30:7-8). During a search incident to arrest, Officers discovered two plastic bags containing methamphetamine near Mr. Crabtree's groin. (Tr. 30:12-13; 31:2-3).

## Discussion

In the instant Motion to Reopen, Mr. Crabtree seeks to reopen the hearing on the Motion to Suppress Count One only. He argues that the canine's, Chopper, signals to Officer Bowman were not trained alerts under the North American Police Work Dog Association certification and training program and seeks to introduce expert testimony to support that argument. (Doc. 56). Thus, Mr. Crabtree contends Chopper's alert to narcotics could not create probable cause to search his vehicle. The Court recommends denying Mr. Crabtree's Motion to Reopen.

The District Court has the discretion to reopen a suppression hearing after it has issued its ruling on the motion to suppress. *See United States v. Chavez Loya*, 528 F.3d 546, 555 (8th Cir. 2008) (citing *United States v. Gill*, 513 F.3d 836, 846 (8th Cir. 2008); *United States v. Johnson*, 944 F.2d 396, 403 n. 5 (8th Cir. 1991)). The United States Court of Appeals for the Eighth Circuit has recognized that the standard that the District Court should use when deciding whether to reconsider its ruling on a suppression issue after ruling on a motion to suppress "is not established in this circuit." *United States v. Laws*, 819 F.3d 388, 396 (8th Cir. 2016) (citing *United States v. Hayden*, 759 F.3d 842, 845 (8th Cir. 2014)).

The Eighth Circuit has considered at least two factors when addressing whether a district court should reopen a suppression hearing. First, it has considered whether the moving party has explained why the evidence could not have been raised during the initial suppression hearing. Second, it has considered whether the evidence would have an impact on the court's earlier ruling. Courts outside the Eighth Circuit have also considered whether prejudice to the opposing party exists. The Court will address each factor in turn.

## I. Mr. Crabtree Has Not Shown Why He Could Not Challenge Chopper's Alert at the Initial Suppression Hearing

First, the Eighth Circuit has considered whether the moving party has shown why he or she could not have made the argument at the initial hearing on the motion to suppress. *See Chavez Loya*, 528 F.3d at 555 (concluding that the district court did not err when it denied the defendant's request to reopen his objections to the magistrate judge's report and recommendation where the defendant did not indicate "why his objection to the search…could not have been raised earlier").

In the Motion to Reopen, Mr. Crabtree seeks to introduce expert testimony to challenge the way in which Chopper alerted to his vehicle. He explains that he did not challenge Chopper's alerts in the initial suppression hearing because he was unaware that Officer Bowman would testify to the details of Chopper's alerts. However, Mr. Crabtree has not shown why he could not challenge Chopper's alert at the initial suppression hearing, during which the Parties explored Chopper's reliability concerning his alerts. Mr. Crabtree knew Officer Bowman, Chopper's handler, would testify at the suppression hearing about the investigatory traffic stop during which Chopper alerted to narcotics in Mr. Crabtree's vehicle. Despite his alleged lack of notice prior to the hearing, during the initial suppression hearing, Mr. Crabtree meticulously cross-examined Officer Bowman about Chopper's training, certification, abilities, and reliability. (Tr. 31-41; 46-49; 56-60). Mr. Crabtree also thoroughly addressed the area on his vehicle to which Chopper alerted. (Tr. 48:1-10). Specifically, Mr. Crabtree relied on testimony by an automotive technician concerning the areas where air escapes in Mr. Crabtree's vehicle to argue that airborne particles containing narcotics could not have been present in the location to which Chopper alerted.

Moreover, even assuming that Mr. Crabtree did not know that Officer Bowman would testify to the manner in which Chopper alerted, Mr. Crabtree failed to raise this argument before the District Court in his objection to the Court's first Report and Recommendation[1] and waited three months after the District Court's denial of his motions to suppress to raise this argument. Despite Mr. Crabtree's present application to raise an issue about Chopper's training, certification, abilities, and reliability of alerts, the Parties thoroughly scrutinized Chopper's credentials at the initial suppression hearing and the Court deemed Officer Bowman's testimony credible. (Tr. 20-

---

[1] The District Court may receive further evidence when considering an objection to a Report and Recommendation. 28 U.S.C. § 636(b)(1) (2009); *Hayden*, 759 F.3d at 846 (recognizing that "the district court has discretion to receive new evidence without any special justification while conducting *de novo* review of a magistrate judge's report and recommendation" (citations omitted)).

22; 31-41; 46-49; 53-60). Thus, Mr. Crabtree has failed to show why he could not raise this issue at the initial suppression hearing.

**II.  Mr. Crabtree's Proffered Evidence Would Have No Effect on the Court's Decision**

Second, the Eighth Circuit has considered whether the proffered evidence would have affected the Court's prior decision. *See United States v. Walker*, 840 F.3d 477, 484 (8th Cir. 2016) (motion to reopen suppression hearing properly denied where new evidence Defendant wanted to present would not impact court's ruling); *United States v. Gill*, 513 F.3d 836, 846 (8th Cir. 2008) (motion to reopen suppression hearing properly denied for evidence of limited probative value where "district court heard all of the relevant testimony and made credibility determinations and findings of fact based on the evidence presented"); *see Chavez Loya*, 528 F.3d at 555 (motion to reopen suppression hearing properly denied where proffered evidence pertained to a search that resulted in drugs different from the drugs that supported his conviction). In the present case, additional testimony concerning Chopper's training, certification, abilities, and reliability of alerts would have no impact on this Court's previous decision because Chopper is proficiently trained and certified and reasonably alerted to Officer Bowman signaling that narcotics were present in Mr. Crabtree's vehicle. The Court will first address its prior conclusion that Chopper is proficiently trained and certified. It will then turn to its conclusion that Chopper reasonably alerted to the presence of drugs in Mr. Crabtree's vehicle. Finally, it will distinguish the two cases cited in a footnote in its first Report and Recommendation to which Mr. Crabtree refers.

*A. Chopper is Proficiently Trained and Certified*

Here, additional testimony regarding Chopper's alert would have had no impact on the Court's conclusion that Chopper constitutes a reliable canine and his alert provided probable cause to search Mr. Crabtree's vehicle. In his Motion to Reopen, Mr. Crabtree seeks to offer the testimony of a canine expert to show that Chopper's alerts, as stated in Officer Bowman testimony, were "not trained alerts under the North American Police Work Dog Association and training program, but are rather behaviors that have to be seen before the trained alert takes place." (Doc. 56). Thus, Mr. Crabtree appears to challenge Chopper's training, certification, abilities, and reliability.[2] In

---

[2] The Court notes that a defendant "must have an opportunity to challenge such evidence of a dog's reliability, whether by cross-examining the testifying officer or by introducing his own fact or expert witnesses." *Florida v. Harris*, 568 U.S. 237, 247 (2013). Here, Mr. Crabtree thoroughly cross-examined Officer Bowman on Chopper's reliability during the initial suppression hearing. (Tr. 31-41; 46-49; 56-60). Mr. Crabtree also had ample opportunity to challenge Chopper's reliability through objections to the first Report and Recommendation and by proffering further evidence

other words, Mr. Crabtree again relies on the inverse of the rule that an alert by a reliable dog gives an officer probable cause to search a vehicle. *See United States v. Sundby*, 186 F.3d 873, 875–76 (8th Cir. 1999). However, as explained in the first Report and Recommendation, the question for the Court is "whether all the facts surrounding a dog's alert, viewed through the lens of common sense, would make a reasonably prudent person think that a search would reveal contraband or evidence of a crime." *Florida v. Harris*, 568 U.S. 237, 248 (2013) (emphasis added). Here, that answer is yes.

The Government established, through Officer Bowman's testimony and Exhibit #2, Chopper's certificates for his state and national certifications, that Chopper was certified as proficient in identifying drugs by the Missouri Police Canine Association and the North American Police Work Dog Association. *See United States v. Jackson*, 811 F.3d 1049, 1052 (8th Cir. 2016) ("An affidavit 'need only state the dog has been trained and certified to detect drugs' and 'need not give a detailed account of the dog's track record or education.'" (quoting *United States v. Lakoskey*, 462 F.3d 965, 978 (8th Cir. 2006))). Additionally, Officer Bowman testified that Chopper had a perfect record in training. *See Harris*, 568 U.S. at 246 ("[E]vidence of a dog's satisfactory performance in a training program can itself provide sufficient reason to trust his alert."). Mr. Crabtree does not challenge either Chopper's certification or his training record. Therefore, the Court concluded that Chopper is proficiently trained and certified and the testimony that Mr. Crabtree seeks to offer would not alter this conclusion.

B. *Chopper Reasonably Alerted to Officer Bowman*

The Court now turns to its conclusion that Chopper reasonably alerted Officer Bowman to the presence of drugs in Mr. Crabtree's vehicle and that Mr. Crabtree's proffered evidence would not affect this conclusion. Although the Eighth Circuit has concluded that a drug dog must do more than show mere "interest" as opposed to an "alert" to support a finding of probable cause, *United States v. Jacobs*, 986 F.2d 1231, 1235 (8th Cir. 1993), it has rejected the idea that a drug dog must give a full "indication" to support a finding of probable cause, *United States v. Holleman*, 743 F.3d 1152, 1156–58 (8th Cir. 2014) (distinguishing *Jacobs* and recognizing that "[s]ome courts have held a trained drug dog's 'alert,' as opposed to the more conclusive 'indication,' is enough to establish probable cause" when finding a drug dog's alert to the defendant's vehicle sufficient

---

to the District Court. Mr. Crabtree chose not to further challenge Chopper's reliability until he filed the Motion to Reopen, nearly three months after the District Court issued its ruling on the motions to suppress.

to establish probable cause). Here, the Court has concluded that Chopper is proficiently trained and certified and Officer Bowman testified that Chopper alerted to Mr. Crabtree's vehicle. Thus, Chopper's alerts including changes in breathing, speed of sniffing, ear movement, lowered posture, and directed focus constitute reasonable examples that signaled the presence of illegal narcotics. *See e.g.*, *Harris*, 568 U.S. at 246 (stating that "evidence of a dog's satisfactory performance in a certification or training program can itself provide sufficient reason to trust his alert" and rejecting a state's list of requirements, which must have been met prior to finding probable cause); *Holleman*, 743 F.3d at 1154 (upholding canine sniff where canine on first sniff "stopped dead in his tracks and began to really detail the area" and on second sniff "stopped and detailed the same area…"). Therefore, the Court concludes that Chopper reasonably alerted the presence of narcotics to Officer Bowman and Mr. Crabtree's proffered evidence would not affect this conclusion.

  *C. Heald and Esteban Not Analogous*

In its initial Report and Recommendation, the Court noted in a footnote that, on rare occasions, other district courts excluded evidence produced by dog sniffs, but those courts generally focused on the way the dog "alerted" and the training the dog received. *See*, *e.g.*, *United States v. Heald*, 165 F. Supp. 3d 765, 777–81 (W.D. Ark. 2016) (officers could not rely on the dog sniff where a dog had never conducted a sniff in day time, the sniff occurred in extreme heat, the dog "alerted" in an untrained manner, and the canine handler expressed doubt as to whether the dog actually alerted); *United States v. Esteban*, 283 F. Supp. 3d 1115, 1133–37 (D. Utah 2017) (probable cause did not exist where testimony by an expert in detection dogs raised serious concerns about the efficacy of the dog's training and certification). In the Motion to Reopen, Mr. Crabtree points to the Court's footnote identifying *Heald* and *Esteban*. However, these cases are not analogous to the present case.

In *Heald*, the drug dog was over heated at the time of the sniff and had never conducted a sniff in daytime, the time of day during which the sniff at issue occurred. 165 F. Supp. 3d at 777–78. Similarly, the dog alerted in an untrained manner and the canine handler expressed doubt as to whether the dog actually alerted. *Id.* at 778–79. In the present case, no concern existed as to Chopper's health, nor whether or not he actually alerted. Officer Bowman testified to the exact location on the car to which Chopper alerted. (Tr. 48:1-10). Additionally, unlike the canine in *Heald* where the dog was unfamiliar working in the conditions at issue, Officer Bowman testified to Chopper's extensive training around cars and engine odors. (Tr. 41:6-17).

In *Esteban*, the Court expressed concerned with the credibility of the dog's training and certification coupled with the dog's uncharacteristic alerts in the specific case. 283 F. Supp. 3d at 1133–37. In the present case, the Court has concluded that Chopper is proficiently trained and certified and has found Officer Bowman's testimony credible. During the initial suppression hearing, Officer Bowman presented substantial testimony and evidence supporting Chopper's credibility. (Tr. 20-22; 31-41; 46-49; 53-60). Officer Bowman had no issue determining when Chopper alerted. (Tr. 48:1-10).

For these reasons, this case differs substantively from both *Heald* and *Esteban* and neither affects the Court's prior conclusions.

### III. Granting the Motion to Reopen Would Prejudice the United States

Third, courts outside the Eighth Circuit, including the *Kithcart* Court, which the Eighth Circuit has cited to, consider whether the non-moving party would be prejudiced by granting the motion. *See United States v. Kithcart*, 218 F.3d 213, 220 (3d Cir. 2000) ("When faced with a motion to reopen, the district court's primary focus should be on whether the party opposing reopening would be prejudiced if reopening is permitted." (citations omitted)); *United States v. Baker*, 562 Fed. App'x. 447, 450 (6th Cir. 2014) (addressing "the timeliness of the motion, the character of the proposed testimony, the effect of granting the motion, and, most importantly, whether the opposing party will be prejudiced by reopening the record" when addressing whether a district court has abused its discretion in deciding a motion to reopen (quoting *United States v. Holland*, 522 F.App'x 265, 270 (6th Cir. 2013))). Here, granting the Motion to Reopen would prejudice the United States.

The Court filed its first Report and Recommendation on December 8, 2019. (Doc. 49). Mr. Crabtree then filed his objection to the first Report and Recommendation on December 23, 2019. (Doc. 52). After considering Mr. Crabtree's objection, the District Court overruled the objection, adopted the first Report and Recommendation, and denied the motions to suppress on May 11, 2020. (Doc. 55). On August 10, 2020, nearly three months later, Mr. Crabtree filed the Motion to Reopen. (Doc. 56). To grant Mr. Crabtree's request after such a delay would prejudice the United States.

Further, Mr. Crabtree did not address the issues of Chopper's training, certification, abilities (specifically concerning alerting), and the reliability of Chopper's alert in his objections to the first Report and Recommendation. Additionally, Mr. Crabtree did not proffer any additional evidence

to the District Court when it reviewed the suppression issues. Thus, even if Mr. Crabtree was "unaware of the manner in which the canine Chopper is said to have alerted to narcotics in Defendant's vehicle," (Doc. 56), Mr. Crabtree had ample time to raise concern regarding Chopper's alerts prior to filing the Motion to Reopen.

Given the prolonged period of time and the nature of the proposed evidence, the Government would be prejudiced by reopening the record. Officer Bowman, through his testimony, established Chopper's training, certification, abilities, and reliability of the alert. At the initial suppression hearing, Mr. Crabtree thoroughly questioned Officer Bowman regarding both Officer Bowman and Chopper's training, certification, abilities, and reliability of alerts during the initial suppression hearing. To grant the Motion to Reopen would prejudice the United States.

## Conclusion

For the reasons above, Defendant's arguments regarding reopening the hearing on evidence suppression in this case are without merit, and the Motion to Reopen should be denied.

Accordingly, IT IS THEREFORE RECOMMENDED that the Court, after making an independent review of the record and applicable law, enter an order DENYING Defendant William Austin Lee Crabtree's Motion to Reopen Suppression Hearing as to Count One. (Doc. 56).

Counsel are reminded that each party has fourteen (14) days from the date of receipt of a copy of this Report and Recommendation within which to file and serve objections. A failure to file and serve objections by this date shall bar an attack on appeal of the factual findings in the Report and Recommendation which are accepted or adopted by the district judge, except on the grounds of plain error or manifest injustice.

Dated this 11th day of September, 2020, at Jefferson City, Missouri.

*Willie J. Epps, Jr.*

Willie J. Epps, Jr.
United States Magistrate Judge